JONES, Justice:
On August 15, 1968, appellants’ engine and appellee’s car collided where the track of the railroad crosses Concord Street in the City of Natchez.
Asserting injuries, appellee sued in the Circuit Court of Adams County, obtained judgment for $3,000. Hence this appeal. We affirm.
Three assignments of error claim insufficiency of the evidence to show negligence. Appellee’s instruction Number 5 is alleged to be erroneous, and it is asserted the ver-diet is excessive.
The proof had many contradictions. Appellee was employed and about 7:45 a. m. was on her way to work. Concord Street runs in a general east and west direction. It leaves a four-lane road running north and south, and goes west for a short distance before reaching the crossing. Ap-pellee had traveled the road many times on her way to work and was familiar with it. The track ran about north and south. Appellants’ engine at the time was traveling south and appellee west.
The pictures introduced show that the tracks at the crossing are much higher than the approaches. To the north, the pictures show much foliage and many bushes and trees so that it is difficult to see.
Appellee neared the crossing with at least two cars behind her car — the third car was driven by Mrs. Martha Rice. The driver of the second car was unknown, since he did not stop — apparently not desiring to “be involved.”
The appellee testified that she, being familiar with the situation, stopped at the “Stop” sign and listened carefully; that her windows were down on both sides; she had no air conditioning; and the radio was off. She listened carefully for train signals because she was afraid of the crossing. There was nothing to interfere with her hearing and that definitely there were no signals until after she had started again and was within a foot or two of the crossing. She did not see the train until that point. She then tried to turn to the left and go around the front of the engine but was struck and knocked to the west and south side of the crossing.
Mrs. Martha Rice, in the second car behind appellee, also testified she was familiar with the crossing and stopped to look and listen. She testified that she saw no train *638 until it was practically on the crossing; that she had no air conditioner; that she was listening to the radio; and that her windows were up but the vents were open. She heard no signals. She said she did not know whether appellant stopped at the stop sign, but there was, as stated above, another car in front of her, between her car and appellee’s.
As opposed to this, the appellant engineer testified the signals were given as required by statute. When called as an adverse witness he became confused, but on being recalled, testified as above.
He said the stop sign was forty-five or fifty feet from the crossing; that as he came within forty or fifty feet of the crossing he could see down Concord Street to the highway from which it extended; that the appellee did not stop at the sign and, later, he said that he first saw her about twenty-five feet from the crossing which, of course, was past the crossing sign. After this he did not say she did not stop, but only that he “didn’t see her stop.” He also said he could stop the engine at the speed it was going in about forty to fifty feet, and that he did stop on the crossing.
One Larry Chauvin testified he came from the Armstrong plant on the west side of the track; that he saw the train and heard the signals; that as he approached the crossing on the west side, in Concord Street, he saw appellee and that she did not stop at the sign. It was for the jury to say whether he could see her fifty feet over the crossing or whether the rise in the road prevented vision.
This evidence made a case for jury decision and the lower court was not in error in letting the case go to them.
The appellee’s instruction, to which appellant objects, reads:
The Court charges you that if any nine (9) of you find for the minor Plaintiff, it is not necessary for all twelve of you to concur in the amount to be awarded. Nine of you may agree upon the amount and return that amount into court as the amount determined by the jury.
The Court further charges you that if you find for the minor Plaintiff, you shall take the following things into consideration in arriving at your verdict: Pain and suffering, if any; medical expenses, if any; injuries to Plaintiff’s body, if any; and, the duration of such injuries, all as may be shown by a preponderance of the evidence that the Plaintiff sustained as a proximate result of the collision. The Plaintiff is entitled to be fully compensated for her injuries and damages, and on those elements of damages stated above that you find to be present from the evidence, it is your duty to place a value on such element, or elements, even though it may be difficult to determine from the evidence.
The argument is that the instruction is a peremptory because of the last sentence, even though the entire instruction was predicated upon a finding for Plaintiff.
Appellant secured instructions:
(1) Permitting comparative negligence to be applied;
(2) That on failure of plaintiff to prove her case by a preponderance of evidence, verdict should be for appellant;
(3) That it was necessary to prove negligence on part of appellant and that it was a proximate cause;
(4) That if they (the jury) believed the bell was rung and whistle blown and should have been heard by appellee before going on the track, it was not necessary to show that she actually heard;
(5) That if the jury believed appellee should have seen the train approaching, then, as a matter of law, she did see it;
(6) That if appellee’s negligence was the sole proximate cause, the jury should find for appellant; and
*639 (7) That damages, if any, should be reasonable.
On this issue we think the instructions as a whole fairly presented the case and that the instruction quoted was not reversible error.
It is further said that the statement in the instruction that she should be “fully” compensated is reversible error.
On this issue we quote from Mississippi decisions:
In Mobile & O. R. Co. v. Campbell, 114 Miss. 803, 75 So. 554 (1917), the Court said:
Keeping in mind, then, the facts of the case, there is no real cause to complain at instruction No. 1 because it authorizes the jury to return a verdict for “full damages.” The word “full” is here more nearly synonymous with the word “all,” and simply means such damages as the jury think the plaintiff is warranted in receiving. (114 Miss, at 825, 75 So. at 559).
From the above mentioned case, we again quote:
As applied to the facts of the case, instruction No. 1 properly defined the duty imposed upon the defendant, and it only remains to determine whether the words “full damages” nullified the defendant’s plea of contributory negligence. Conceding for the purpose of argument that the plaintiff was guilty of contributory negligence, even then the jury in deliberating upon a verdict and in arriving at the amount of that verdict would first be compelled to determine the full extent of plaintiff’s injuries in accordance with the directions of the instruction complained of. The purpose of our comparative negligence statute is to authorize a negligent plaintiff to recover, but to recover only an amount diminished in proportion to the negligence of the respective parties to the litigation. The very word “diminish” presupposes some fixed amount to be cut down or subtracted from. A jury, in ascertaining what amount they will award the plaintiff, would naturally direct their minds to the extent of the injuries — the full amount of damages — and then determine the proportion of negligence which the evidence shows each party was guilty of. There would necessarily be some starting point for the jury. — -some basis from which the calculations are to be made. If the jury did not first ascertain the full damage and accept this as a basis for their calculation, then they would be figuring in the dark and without a legal criterion of any kind. Their verdict thus arrived at would be about as certain as a survey made without any starting point. The instruction complained of in no wise sought to deny to the defendant its right to have the doctrine of comparative negligence submitted to the jury on proper instructions. The defendant did obtain instruction No. 8 whereby the issue of comparative negligence was duly submitted. Instruction No. 1 did not tell the jury that they must return full damages regardless of contributory negligence. It said nothing about contributory negligence. It was the contention of the plaintiff that there was no contributory or comparative negligence. He had a right to present his contentions according to his proof. The word “full” had no particular significance. If this word had been left out, the instruction would have meant the same thing. (114 Miss, at 827-828, 75 So. at 559-560).
In the case of Davis, Director General of Railroads v. McCullers, 126 Miss. 521, 89 So. 158 (1921), our Court said:
This instruction also permits a recovery of “full compensation” to all beneficiaries for all kinds of damages. This error was calculated to mislead the jury with reference to, and influenced it against, diminishment of damages on account of contributory negligence.
However, these errors, standing alone, would not cause a reversal of the case on *640 the question of liability, but, coupled with the error of the court in refusing to grant instruction No. S, asked by the defendant, charging the jury that Mrs. Mc-Cullers was guilty of contributory negligence proximately contributing to the accident, we think the judgment must be reversed as to the amount of damages. (126 Miss, at 533, 89 So. at 159).
In Standard Oil Co., et al. v. Crane, 199 Miss. 69, 23 So.2d 297 (1945), the Court said:
The instruction is predicated upon the condition that the jury first find for the plaintiff, a conclusion which could not be reached unless negligence was first adjudged, upon which issue other instructions fully set out the applicable tests. Nor do we find reversible error in the authorization to fix their verdict “for that sum which will be fair and reasonable compensation for all damages sustained by the plaintiff, if any * Defendants procured an instruction invoking the doctrine of comparative negligence. * * * (199 Miss, at 81, 23 So. 2d at 299).
Appellants allege the verdict to- be excessive. Appellee was treated by Dr. E. L. McAmis, who said she had muscle spasms, pain in the neck and tenderness on pressure in the thorasic and lumbar region. There were no broken bones; the pain had extended for a year or more; and that from the existence of pain for such a time it is apt to persist for a prolonged period. Bending or lifting of anything could act as a precipitating factor to other injuries; she will have to take non-narcotic pain relievers; and she will have to limit her activity and be careful about bending or lifting. She was not malingering. His bill was $125 or $135. The doctor could not tell how long the condition would continue.
Appellee testified she did not work from August 15 for about ten days, when she went home and went to bed and then to see Dr. McAmis. Pursuant to plans already made, she married in about two weeks. She had prepared for a large wedding but was not up to it, and confined it to a small and simple affair. They moved to Starkville where they had an apartment but she could not do the housework and in about a month returned to her mother’s. She stayed at her mother’s because she could do neither housework nor other work because of her back.
She ran a teletype and worked the switchboard at Armstrong because she had to have the money. She did not feel up to it, but had to. She said her back was hurting her while on the stand (November 7, 1969— fifteen months after accident). She had headaches for maybe two days at a time. She also suffered from dizziness and nausea.
She is again working at State in a light job, but has to because her husband is going to school; they have no money and no one to help them.
The verdict, including the doctor’s bill, at the time of the trial amounted to about $200 per month for pain, without considering future suffering.
Perhaps some of us, if on the jury, would not have rendered the verdict that was rendered. However, in view of the prolonged pain, and the probability of continuance thereof as shown, we cannot say the amount of the judgment is so great as to shock the conscience or evince bias and prejudice.
The judgment is affirmed.
Affirmed.
ETHRIDGE, C. J„ and RODGERS, BRADY and INZER, JJ., concur.